## JACOB MONK *vs.* HENRY BEAL.

Under an order as follows: "Mr. J. M.: Please forward to the address or order of H. B. such number of your New American Map as he may from time to time order, and charge the same to us at your usual price, for which we, or either of us, promise to pay you on demand. H. B., A. B.;" the latter is liable as an original debtor for maps furnished to H. B. in compliance therewith.

An order to a publisher of maps to furnish such number of his New American Map to H. B. as he might from time to time order, renders the drawer of it liable for different varieties of the New American Map, printed from the same plate, and furnished to H. B. in compliance with the order, and accepted by him, although they are of different prices, and with different titles and coloring, and railroad and telegraph lines are indicated upon a portion of them.

No exception lies to the refusal by a judge of the superior court to recommit an auditor's report, or to grant a continuance of a case.

The testimony of an auditor to whom a case has been referred is inadmissible to control or in any way affect his report.

CONTRACT. The second count in the declaration alleged that the defendants drew an order upon the plaintiff, as follows: "Plymouth, Mass. June 19th 1856. Mr. Jacob Monk, Philadelphia, Pa. Please forward to the address or order of Henry Beal such number of your New American Map, &c., as he may from time to time order, and charge the same to us at your usual price, for which we, or either of us, promise to pay you on demand. Henry Beal, Asahel Beal:" and that, pursuant to said order, he forwarded goods according to an account annexed, for which the defendants owed him. The account was principally for "Standard Maps," "R. R. & T. Maps," "Central A. Maps"

and " New Amer. Maps," which were charged at different prices. Henry Beal was defaulted, and Asahel Beal alone defended, and filed an answer denying in detail all the averments of the declaration.

At the trial in the superior court, before *Russell*, J., the plaintiff read in evidence the report of an auditor to whom the case had been referred, the contents of which are sufficiently stated in the opinion. In relation to the fact found by the auditor, that Henry Beal was not acting as the plaintiff's agent, in receiving maps from him, the defendant moved that the case should be recommitted, with instructions to the auditor to report the evidence ; but the judge declined so to order. The defendant then moved for a continuance, to enable him to take the plaintiff's deposition upon the subject : but this the judge declined to grant. The defendant then called the auditor as a witness, and asked him to state whether there was any evidence before him of any order from Henry Beal, other than those contained in certain letters from Henry Beal to the plaintiff, returned as a part of the report; but, objection being made, the evidence was excluded. In some of these letters, Henry Beal spoke of himself as agent of the plaintiff.

The judge instructed the jury "that the writing signed by defendants did not constitute a contract of guaranty or suretyship, but an original contract by both defendants to pay for such articles as should be furnished in accordance with its terms ; that under said contract the defendant was only liable for copies of Monk's New American Map, furnished by the plaintiff on the order of Henry Beal; that it was a question of fact, what Monk's New American Map was; that although some maps had the boundaries of counties colored, and some had not, and although some had the lines of telegraphs and railroads, and some had not, yet if, notwithstanding these variations, and such variations in price as were in evidence, the maps were all known as Monk's New American Maps, then these variations would not render the contract void, nor discharge the defendant from his liability for the maps furnished under it; that the maps, in order to render the defendant liable, must be furnished to Henry

Beal on his order or orders; that if Henry Beal received them as agent for Monk, then Asahel was not liable."

The jury returned a verdict for the plaintiff, for all the maps charged, except those of Central America: and the defendant alleged exceptions.

*P. Simmons*, for the defendant.

*A. L. Cushing*, for the plaintiff.

CHAPMAN, J. This action has arisen out of a species of business which has been carried on very extensively in this country. Publishers of maps and of certain books which are supposed to be adapted to this species of trade, procure their sale by causing them to be sold from house to house by peddlers. The business of selling them employs a great number of persons, who are commonly called agents ; and, in order that they may not interfere with each other, a certain district, consisting of one or more states, counties or towns, is assigned to each. Sometimes the article is sold for account of the publisher, and the peddler receives wages or commissions. Sometimes it is sold to the peddler, in which case he usually procures a guarantor ; and sometimes he procures some responsible friend to be the purchaser, either alone or jointly with him. In this case, the auditor reports that Henry Beal did not receive the maps charged in the bill of particulars as the agent of the plaintiff, but as sold according to the terms of the written contract declared upon. This writing was addressed to the plaintiff, and signed by both the defendants. This makes both of them original parties to the contract, and their promise to pay is joint as well as several. And the fact that the articles were to be forwarded to the address or order of Henry Beal does not change the character of the promise, so that one of them is to be regarded as principal and the other as a mere guarantor. The direction to make the original charge to both is inconsistent with such a distinction. The ruling on this point was correct.

The instruction was also correct as to the question whether the maps delivered to Henry Beal were such as the contract described. It appears by the auditor's report that there was a variety of maps, distinguished by different titles. But they

were all engraved from the same plates, and they differed only in the coloring, and the addition of railroad and telegraph lines upon some of them. The evidence tended to show that they were mere varieties of the "New American Map," a name which applied to all of them; and the jury were authorized to find, as they must have done in order to find for the plaintiff, under the instructions given to them, that the maps furnished to Henry Beal were in fact such as were described in the contract. And upon such a state of facts the court rightly refused to rule that the plaintiff could not recover.

The rulings as to recommitting the report and as to the continuance of the cause were within the discretion of the presiding judge, and therefore are not subject to exception. *Kendall* v. *Weaver*, 1 Allen, 277.

The testimony of the auditor, which was offered for the purpose of supplying certain alleged omissions in his report, was properly rejected. His report is the only competent evidence of what was proved before him. The statute makes it evidence, and establishes the degree of its weight. It may be competent for various purposes to prove whether a certain witness was called, and what he testified before the auditor, or whether particular facts occurred at the hearing; but to examine an auditor as a witness for the purpose of impeaching his report, by proving that his conclusions were erroneous upon the evidence before him, is inadmissible. See *Sparhawk* v. *Twichell*, 1 Allen, 450. This seems to have been the object of the question proposed and ruled out. *Exceptions overruled.*